In the Matter of the Accounting of OTTO RUPRECHT et al., as Executors of RUDOLPH R. NOLL, Deceased.

OTTO RUPRECHT et al., Individually and as Executors and Trustees under the Will of RUDOLPH R. NOLL, Deceased, et al., Appellants; MARTIN NEUMANN, as Special Guardian of ELEANOR G. NOLL, an Infant, et al., Respondents.

Argued January 4, 1937; decided March 9, 1937.

*Edward F. Clark, Albert B. Gins* and *Edward A. Pfeffer* for executors, appellants. The Appellate Division erred in surcharging the executors with the sum paid for debts incurred in the decedent's business. (*Matter of Neil,* 238 N. Y. 138; *Kahn* v. *Tierney,* 135 App. Div. 897; 201 N. Y. 516; *Robinson* v. *Martin,* 138 App. Div. 310; 200 N. Y. 159; *Matter of Silsby,* 229 N. Y. 397; *Matter of Hayes,* 263 N. Y. 219; *Matter of Buttner,* 243 N. Y. 1; *Matter of Watson,* 262 N. Y. 284; *Matter of Gary,* 261 N. Y. 244; *Matter of Martin,* 255 N. Y. 248; *United States Trust Co.* v. *Baes,* 245 N. Y. 514; *Matter of Fricke,* 122 Misc. Rep. 427; *Taylor* v. *Dodd,* 58 N. Y. 335; *Matter of Title Guarantee & Trust Co.,* 195 N. Y. 339; *Roe* v. *Vingut,* 117 N. Y. 204; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Archer* v. *Timberlake,* 63 Sol. Jo. 286; *Bretell* v. *Holland,* 2 Ch. 88; *Oddie* v. *Woodford,* 3 My. & Cr. 584.)

*Richard J. Mackey* for Gerda Noll, appellant. The Appellate Division was correct in holding that the debts of the business should not have been paid exclusively out of the general assets of the estate. (*Matter of Bruns*, 143 Misc. Rep. 696; *Matter of Lowe*, 149 App. Div. 347; 206 N. Y. 671; *Central Trust Co.* v. *Richards*, 35 Misc. Rep. 247.)

*Martin Neumann*, as special guardian of Eleanor G. Noll, an infant, respondent.

CRANE, Ch. J. Rudolph R. Noll was the sole owner of a granite memorial business which he carried on in his individual capacity. He died on the 6th day of September, 1933, survived by his wife and minor daughter. His will was dated May 18, 1933, and in its pertinent provisions read:

" *First*. I direct my executors hereinafter named to pay all my just debts, and funeral expenses.

" *Second*. I give and bequeath to my wife, Gerda, the sum of Two Thousand Five Hundred Dollars, all my household furniture, books, utensils, pictures, wearing apparel, and any automobile that I may own at the time of my death, that is not used for the purpose of my business.

" *Third*. All savings accounts that I have opened in various banks, as trustee for my daughter, Eleanor G., I hereby confirm.

" *Fourth*. I authorize and empower my executors to continue my business at 49–51 Conway St., in the Borough of Kings, City of New York, and I direct that as soon as convenient after my death said business be incorporated under the laws of the State of New York, under the name of ' Conrad Noll, Rudolph R. Noll, Successor,' in such sum as my executors may deem desirable, and that my said executors transfer to said corporation all the assets of said business in exchange for an equivalent amount of the capital stock of said corporation, and that the

total expense for incorporating said business shall be charged against my estate.

" (a) I direct that Twenty Five per cent of the capital stock of said corporation be given to my friend and manager William Heinz; and it is my wish that he be retained as the manager of said business, as incorporated, and adequately compensated for his services as such manager, irrespective of his ownership of the said Twenty Five per cent of the capital stock of said corporation.

" (b) I direct that Seventy Five per cent of the capital stock of said corporation, be held by my executors, as hereinafter further provided," that is, in trust one-half for the benefit of his wife and one-half for the benefit of his daughter.

He appointed Otto Ruprecht and Frederick A. Albrecht as executors and trustees of his will, giving them full power to sell and dispose of his estate on such terms and conditions as to them seemed best, and also requesting them to employ Otto Ruprecht to take charge of his books of account and income tax returns, and also to continue in their employ his attorney, a resident of Floral Park, Long Island.

These rather unusual details in the will indicate that it was carefully drawn and thought out by the testator. He wanted his directions regarding his debts and his business and his employees understood and executed. Putting ourselves in the place of the testator at the time that he executed this will, in order to ascertain more fully his intent, we appreciate at once that his business was a family affair. It was not a corporation nor a partnership; it was his own business, carried on by him personally. The debts of the business were his own debts the same as were his living expenses. The deceased had a monument business, and the stones in his yard constituted the main part of his assets.

William Heinz was his manager. The business presumably could not continue after Noll's death without Heinz. This the testator recognized, and by his will

made it an inducement for him to continue, so that his wife and daughter might have the income from the business, or such portion of it as was not given to Heinz. The business had been running down, from a profitable one, to one without profit. The annual net income of approximately $14,000 in 1929 and 1930 dwindled each year and, in the first eight months of 1933, the business was operating at a loss. It was during this last year that the will was drawn. The merchandise was of a kind not easily salable, yet no doubt the testator had hopes that with the improvement in financial conditions the business would improve. He counted on Heinz. The criticism, therefore, of the gift of stock to William Heinz, no relative, is unjustifiable. The income, as the testator knew, for his relatives would depend upon Heinz, the manager, after he, the owner, had passed away.

The decedent's gross estate was appraised for transfer tax purposes at $152,000. The value of his business was fixed at the sum of $42,925.31, of which $16,000 represented good will, and over $19,000 merchandise. At the time of his death the business books showed a cash balance of $2,274.78, and the debts due, the sum of $5,470.15. In addition to this, his personal debts, as distinguished from those of his business, amounted to $1,225.62.

As we go along let us bear in mind that the debts, so far as the creditors were concerned, were the debts of the deceased, Rudolph R. Noll. The creditors were not obliged to look to any particular asset for payment. Payment came out of the estate of the deceased, of which there was more than sufficient to pay the debts, and the estate consisted of everything the deceased owned — his business assets, his real estate or any other property.

The executors paid all of the debts owed by the decedent out of the general funds of the estate. This they were bound to do, for all of the debts were owed by the decedent personally. No objection has been raised as to the validity of any claim paid. Then the executors, following

the directions of the will, duly organized a corporation with a capital stock of $44,000, consisting of 440 shares, The certificate of incorporation was filed in December. 1933, and the corporation began business on January 1, 1934. All of the assets of the business, including the cash on hand of $2,274.78, were transferred to the new corporation. The business debts were paid by the estate, and the corporation received all the assets, free from the liabilities. When we speak of the corporation, however, we must remember that it was mostly owned by Noll's wife and daughter; that the estate merely took a different form. The wife and daughter owned three-quarters, or seventy-five per cent of the capital stock.

On the accounting proceedings before the Surrogate he decided that the business debts should have been paid out of the business assets, and surcharged the executors with all the debts listed in Schedule D-1 as the business debts, amounting to $5,865.05. Of these business debts the widow and child would have had to pay seventy-five per cent, as they owned seventy-five per cent of the stock; and yet this decree of the Surrogate has relieved them of this liability and surcharged the executors personally with these debts.

We do not see that the executors improperly disposed of these funds. They were called upon first to settle the estate of Rudolph R. Noll. His estate, whether it constituted business or other assets, owed $7,090.67. This amount was paid, as it should have been, out of the assets of the estate. After the debts were paid the executors were then free to carry out the other provisions of the will. They could not deal with assets for incorporation purposes or any other purpose until the creditors were satisfied. The incorporation of the business, as we have said, was to carry out the will of the testator in behalf of his daughter and his wife. They were to have seventy-five per cent of the stock, and the twenty-five per cent was merely payment to a manager to carry on the business for them.

The testator knew his circumstances; his will indicates a desire to provide solely for his wife and daughter, and no doubt he used the best means to accomplish the purpose by keeping Heinz in the business. He knew what he was doing when he told his executors, in the very first clause of his will, to pay " *all* my just debts, and funeral expenses." All his debts included those of the business as well as others. They paid them all — the very first thing they did — and cannot be surcharged for having carried out his instructions.

The assets were turned over to the business after it was incorporated, as we have said, also in accordance with the terms of the will, for the benefit of the wife and daughter. *Matter of Lowe* (206 N. Y. 671), so much relied upon, simply turned upon the question of the testator's intent. A case more in point is *Archer* v. *Timberlake* (63 Sol. J. & R. 286). It was there said, regarding a similar provision: " The question here is whether the gifts of the shares in the business carried with them the obligation on the part of the legatees to discharge the trade liabilities which the testator had incurred in connection with the business. Having regard to the terms of the will, I am of opinion they do not. These liabilities are debts incurred by the testator like any other debts, and must be discharged in the same way. The result is that they must in the first instance be discharged out of the residuary personal estate and to the extent that it is insufficient must be borne rateably by the specific legatees and devisees." (See, also, *Brettell* v. *Holland*, [1907] 2 Ch. 88; 76 L. J. Ch. 449; 97 L. T. 49.)

For the reasons here stated the order of the Appellate Division, and the decree of the Surrogate, in so far as they have surcharged the executors with the sum of $5,865.05, are modified, and the amount allowed to the executors as a proper payment. The reduction in the pay of the attorneys to the sum of $3,000 and the disallowance to

the guardian of the sum of $275 for a certified public accountant, are matters resting in discretion, which we do not review.

The order of the Appellate Division should be modified in accordance with this opinion, and as thus modified, affirmed, with costs to all parties payable out of the estate.

O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; LEHMAN and FINCH, JJ., taking no part.

Ordered accordingly.